**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| SPI Energy Co., Ltd., | Case No. 26-10536 |
| Debtor in a foreign proceeding.[1] | |

**PETITIONERS' MOTION FOR (I) RECOGNITION**
**OF FOREIGN MAIN PROCEEDING AND (II) RELATED RELIEF**

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS LLP**

John E. Jureller, Jr., Esq.
Brendan M. Scott, Esq.
Lauren C. Kiss, Esq.
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
JJureller@Klestadt.com
BScott@Klestadt.com
LKiss@Klestadt.com

**THE ROSNER LAW GROUP LLC**

Frederick B. Rosner (DE #3995)
Zhao (Ruby) Liu (DE #6436)
824 North Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 319-6300
rosner@teamrosner.com
liu@teamrosner.com

*Attorneys for the Petitioners*

---

[1] The Debtor in this chapter 15 case, along with the last four digits of the Debtor's Cayman Islands Registration Number, is: SPI Energy Co., Ltd. (in Official Liquidation) (9333). The location of the Debtor's service address for the purpose of this chapter 15 case is c/o Crowe Cayman Ltd., 94 Solaris Avenue, PO Box 30851, Camana Bay, Grand Cayman KY1-1204 Cayman Islands.

4931-8932-5218, v. 1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

JURISDICTION AND VENUE .........................................................................................2

BACKGROUND ...............................................................................................................3

    I.    The Debtor and Related Entities ...........................................................................3

    II.    The Petitioners' Appointment as Joint Official Liquidators....................................7

        a.    Events Leading to Appointment .....................................................................7

        b.    Appointment of the Petitioners as Joint Official Liquidators ...........................8

RELIEF REQUESTED.....................................................................................................15

BASIS FOR RELIEF .......................................................................................................16

    I.    The Cayman Proceeding Should Be Recognized as a Foreign Main Proceeding .16

        a.    The Cayman Proceeding Constitutes a "Foreign Proceeding" .........................16

        b.    The Cayman Proceeding Is a "Foreign Main Proceeding" ..............................18

        c.    The Petitioners Satisfy the Requirements for "Foreign Representatives" Under Section 101(24) of the Bankruptcy Code.........................................................25

        d.    The Chapter 15 Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code .........................................................26

NOTICE..........................................................................................................................27

NO PRIOR REQUEST .....................................................................................................27

CONCLUSION................................................................................................................28

4931-8932-5218, v. 1

## TABLE OF AUTHORITIES

*Cases:*

*In re ABC Learning Centres Ltd.*, 445 B.R. 318 (Bankr. D. Del. 2010)....................................... 17, 19

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,*
389 B.R. 325 (S.D.N.Y. 2008)........................................................................................................19

*In re Berau Capital Resources Pte Ltd.,*
540 B.R. 80 (Bankr. S.D.N.Y. 2015)............................................................................................... 3

*In re Betcorp Ltd.,*
400 B.R. 266 (Bankr. D. Nev. 2009) ........................................................................................ 17, 21

*In re British Am. Ins. Co. Ltd.,*
425 B.R. 884 (Bankr. S.D. Fla. 2010) ............................................................................................ 20

*In re British Am. Isle of Venice (BVI), Ltd.,*
441 B.R. 713 (Bankr. S.D. Fla. 2010) ...................................................................................... 20, 25

*In re Ir. Bank Resolution Corp. (In Special Liquidation)*,
2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) ....................................................... 19, 27

*In re Millard,*
501 B.R. 644 (Bankr. S.D.N.Y. 2013) ............................................................................................ 18

*In re Modern Land (China) Co.*, 641 B.R. 768 (Bankr. S.D.N.Y. 2022) .................................... 18, 21

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
714 F.3d 127 (2d Cir. 2013)...................................................................................................... 19, 20

*In re Ran,*
607 F. 3d 1017 (5th Cir. 2010) ....................................................................................................... 20

*In re Saad Investment Finance Co. (No. 5) Ltd.,*
No. 09-13985 (Bankr. D. Del. Dec. 17, 2009) ............................................................................... 18

*In re SPhinX, Ltd.,*
351 B.R. 103 (Bankr. S.D.N.Y. 2006) aff'd ................................................................................... 18

*In re SPhinX, Ltd.,*
371 B.R. 10 (S.D.N.Y. 2007) ......................................................................................................... 26

*In re Suntech Power Holdings Co., Ltd.,*
520 B.R. 399 (Bankr. S.D.N.Y. 2014) ...................................................................................... 20, 24

4931-8932-5218, v. 1

*In re Tri-Continental Exch. Ltd.,*
349 B.R. 627 (Bankr. E.D. Cal. 2006) ........................................................................ 19

*Lavie v. Ran,*
406 B.R. 277 (S.D.Tex 2009) ..................................................................................... 20

*Zhejiang Topoint Photovoltaic Co. v. Zhi Chen (In re Zhejiang Topoint Photovoltaic Co.),*
600 B.R. 312 (Bankr. D.N.J. 2019) ............................................................................ 26

**Other Authorities:**

11 U.S.C. §§ 101–1532 ..................................................................................................1

11 U.S.C. § 101(23) ..........................................................................................16, 17, 18

11 U.S.C. § 101(24) ..........................................................................2, 15, 25, 26, 28

11 U.S.C. § 101(41) ....................................................................................................25

11 U.S.C. § 105(a) ........................................................................................1, 15, 27

11 U.S.C. § 1502 ...........................................................................................................16

11 U.S.C. § 1502(4) ......................................................................................1, 15, 18

11 U.S.C. § 1504 ............................................................................................1, 2, 26

11 U.S.C. § 1506 ...........................................................................................................16

11 U.S.C. § 1507 .............................................................................................................1

11 U.S.C. § 1507(a) ......................................................................................................15

11 U.S.C. § 1509(a) ..................................................................................................2, 26

11 U.S.C. § 1509(b)(2) .................................................................................................15

11 U.S.C. § 1509(b)(3) .................................................................................................15

11 U.S.C. § 1510 .............................................................................................................1

11 U.S.C. § 1515 ....................................................1, 2, 3, 15, 16, 26, 27, 28

11 U.S.C. § 1515(b) ......................................................................................................26

11 U.S.C. § 1515(b)(1) .............................................................................................2, 27

11 U.S.C. § 1515(c) ...................................................................................................................3, 27

11 U.S.C. § 1516(c) .......................................................................................................................19

11 U.S.C. § 1517.............................................................................................................1, 15, 27, 28

11 U.S.C. § 1517(a) ...............................................................................................15, 16, 25, 26, 27

11 U.S.C. § 1517(a)(2)....................................................................................................................25

11 U.S.C. § 1517(a)(3)....................................................................................................................26

11 U.S.C. § 1517(b)(1) .......................................................................................................16, 20, 21

11 U.S.C. § 1520................................................................................................................... 1, 2, 28

11 U.S.C. § 1521(a) ........................................................................................................................15

11 U.S.C. § 1522...............................................................................................................................1

11 U.S.C. § 1525(a) ........................................................................................................................15

28 U.S.C. § 157.................................................................................................................................2

28 U.S.C. § 157(b).............................................................................................................................2

28 U.S.C. § 1334...............................................................................................................................2

28 U.S.C. § 1410 ..............................................................................................................................3

28 U.S.C. § 1410(1)..........................................................................................................................3

Companies Act § 110(1)(a)..............................................................................................................18

Companies Act § 140(1) ..................................................................................................................18

Federal Rule of Bankruptcy Procedure 2002(q) .............................................................................27

4931-8932-5218, v. 1

Graham Robinson, of Crowe Cayman Ltd., and James Parkinson (the "Petitioners"), the Joint Official Liquidators of SPI Energy Co., Ltd. (In Official Liquidation) ("SPI Energy" or the "Debtor"), respectfully submit this Motion for (I) Recognition of Foreign Main Proceeding and (II) Related Relief (the "Motion").  The Motion is filed in furtherance of the *Official Form Petition* filed concurrently herewith [D.I. 1] (the "Chapter 15 Petition").

## PRELIMINARY STATEMENT

The Petitioners commenced this Chapter 15 case (this "Chapter 15 Case") to obtain recognition of the Official Liquidation of SPI Energy pending before the Grand Court of the Cayman Islands, Financial Services Division, in the Cayman Islands (the "Cayman Proceeding"), and to secure the protections and assistance of this Court in aid of that foreign insolvency process. Since the entry of the Winding Up Order and the appointment of the Petitioners as Joint Official Liquidators, the Debtor's affairs, liquidation decision-making, creditor engagement, books-and-records control, and litigation oversight have been centrally administered from the Cayman Islands under the supervision of the Cayman Court.  The Petitioners anticipate that the Chapter 15 Case will complement the Debtor's primary proceedings in the Cayman Islands to ensure the effective and economic administration of the Debtor's liquidation efforts.  The Chapter 15 Case may prove vital to assisting the Petitioners' investigations and their efforts to recover assets of SPI Energy for the benefit of its creditors.

By this Motion, the Petitioners respectfully seek, pursuant to sections 105(a), 1504, 1507, 1510, 1515, 1517, 1520, and 1522 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), entry of an order substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order") (i) granting recognition of the Cayman Proceeding pursuant to section 1517 of the Bankruptcy Code as a "foreign main proceeding" (as defined in section 1502(4) of the

4931-8932-5218, v. 1

Bankruptcy Code) of the Debtor, and all relief included therewith as provided in section 1520 of the Bankruptcy Code; (ii) recognizing the Petitioners as the "foreign representatives" (as defined in section 101(24) of the Bankruptcy Code) of the Debtor; and (iii) granting such other and further relief as the United States Bankruptcy Court for the District of Delaware (the "Court") deems just and proper.  The relief requested in this Motion is without prejudice to any additional relief the Petitioners may request.

In support of the Chapter 15 Petition and this Motion, the Petitioners submit (i) the *Declaration of Graham Robinson, One of the Joint Official Liquidators, in Support of Debtor's Chapter 15 Petition for Entry of Order Recognizing Foreign Main Proceeding and Granting Additional Relief* (the "Petitioners' Declaration") and (ii) the *Declaration of Ian Lambert in Support of Debtor's Chapter 15 Petition for Entry of Order Recognizing Foreign Main Proceeding and Granting Additional Relief* (the "Cayman Declaration," and together with the Petitioners' Declaration, the "Declarations"), which have been filed contemporaneously herewith and are incorporated herein by reference.

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. This case has been properly commenced pursuant to sections 1504 and 1509 of the Bankruptcy Code by the filing of the Chapter 15 Petition for recognition of the Cayman Proceeding under section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1504, 1509(a).  In accordance with section 1515(b)(1) of the Bankruptcy Code, the Petitioners attached to the Chapter 15 Petition a

copy of the Winding Up Order in the Cayman Proceeding, which appointed the Petitioners as Joint Official Liquidators with respect to the Cayman Proceeding (the "Winding Up Order"). In accordance with section 1515(c) of the Bankruptcy Code, the Petitioners also submitted herein that no other "foreign proceedings" with respect to the Debtor are known to the Petitioners. Accordingly, the requirements of section 1515 have been satisfied.

3.      Venue is proper in this District. Section 1410 of title 28 of the United States Code provides that a case under chapter 15 of the Bankruptcy Code may be commenced in a district in which the debtor has its principal place of business or principal assets in the United States. 28 U.S.C. § 1410(1); *see also In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82 n.1 (Bankr. S.D.N.Y. 2015).

4.      SPI Energy's principal assets in the United States are located within this District. SPI Energy is a worldwide holding company, including with direct and indirect subsidiaries incorporated in Delaware as of the date of this Motion, including, without limitation, SPI Solar, Inc., EdisonFutures Inc., Solarjuice American Inc., Solar4America Franchising Inc., Roofs4America Inc., Solarjuice Distributions Inc., Solar4American Inc., Solar4America Technology, Inc. and Solar4american Tech Sumter LLC.

## BACKGROUND

### I.    The Debtor and Related Entities

5.      SPI Energy is a Cayman Islands company that was incorporated as an exempted company on May 4, 2015, under registration number 299333. *See* Petitioners' Declaration, ¶ 5. Its registered office is currently c/o 373 LTD. (T/A "BOOKERS"), PO Box 31503, Grand Pavilion Commercial Centre, 802 West Bay Road, KY1-1207, Grand Cayman, Cayman Islands. *Id.* A copy

3

of a January 5, 2024 Cayman Islands Registrar of Companies Search Report for SPI Energy and a copy of SPI Energy's July 29, 2025 Certificate of Restoration are attached hereto as **Exhibit B**.

6.        SPI Energy is a global renewable energy company and provider of solar storage and electric vehicle solutions.  The business was founded in 2006 in Roseville, California and at relevant times had its headquarters in Sacramento, California.  As noted above, as of 2015, SPI Energy was registered in the Cayman Islands.  *Id.*, at ¶ 6.

7.        SPI Energy marketed itself as an established renewable energy player with global operations in key markets in Asia, Australia, North America and Europe.  As recently as 2022, SPI Energy listed assets of $231 million with revenue of $271 million in 2022. *Id.*, at ¶ 7.

8.        At relevant times, SPI Energy had three core divisions: (A) Solarjuice, which engages in solar wholesale distribution, residential solar and roofing installation and solar module manufacturing; (B) SPI Solar and Orange Power, which operates a commercial and utility solar division, and (C) EdisonFutures / Phoenix Motors EV division.

- **Solarjuice Division**: The Solarjuice division offered renewable energy systems solutions for residential and small commercial markets and has operations in the Asia Pacific (including Australia) and North America.

- **SPI Solar / Orange Power Division**: The SPI Solar commercial and utility division provided a full spectrum of EPC service (engineering, procurement and construction) to third party project developers, and developed, owned and operated solar projects that sold electricity to the grid in multiple regions including the U.S., U.K., and Europe.

- **EdisonFutures / Phoenix Motors Division**: Phoenix Motor is marketed as a leader in medium duty commercial electric vehicles, developing EV charger solutions, electric pickup trucks, electric forklifts, and other EV products.

*Id.*, at ¶ 8.

4

9.      In addition to the core divisions, SPI Energy also held subsidiaries which established or invested in operations focused on green hydrogen and fossil fuels cells, electric scooters, solar powered data mining and solar powered agriculture (including CBD and hemp production). *Id.*, at ¶ 9.

10.     At all relevant times, SPI Energy was a holding company, which maintained global operations through its direct and indirect wholly owned subsidiaries located and operating in North America, Australia, Asia, United Kingdom, Italy, Greece and Japan.  An outline of SPI Energy's group company and global subsidiaries is set forth on **Schedule A** hereto (collectively referred to as the "SPI Group" or "SPI Group Companies").  Although SPI Energy historically conducted substantial management and operating functions from the United States, that historical operating model no longer reflects the location from which the Debtor's affairs are administered following the Petitioners' appointment.  Based upon the Petitioners' investigation to date, the majority of SPI Energy's U.S.-based subsidiaries have not been actively operating since the date of the Winding Up Order.  Petitioners' investigation of the Debtor's business organization and operations continues but it has been significantly delayed due to the lack of cooperation from SPI Energy's former management and employees.  It is expected that the recognition of the Cayman Proceeding will assist the Petitioners in obtaining more complete information on the subsidiaries and other affiliated entities in the SPI Group Companies.  *Id.*, at ¶ 10.

11.     SPI Energy's common shares are listed for trading on the OTC [Over-The-Counter] Market under ticket: SPIEF.  *Id.*, at ¶ 11. The Debtor's common shares formerly were listed for trading on NASDAQ under ticket: SPI.  On January 13, 2025, the Debtor received a notification letter from The NASDAQ Stock Market LLC (the "NASDAQ Letter") stating that NASDAQ had determined to delist the company's securities from The NASDAQ Capital Market due to violation

4931-8932-5218, v. 1

of Listing Rules 5250(c)(1) (reporting obligations) and 5550(a)(2) (the bid price requirement), as well as the company's failure to hold an annual meeting of the shareholders. The NASDAQ Letter further notified the company that trading in its securities would be suspended effective as of the opening of trading on January 15, 2025. There are currently 22,300,000 ordinary shares issued and trading, with 2,000,000 shares held by insiders. *Id.*, at ¶ 12.

12.     On July 22, 2025, the Petitioners, as the Joint Official Liquidators, filed a Form 8-K with the SEC, providing notice to all interested parties including any equity holders that SPI Energy was placed in Official Liquidation by the Winding Up Order of the Cayman Court, the appointment of the Petitioners as the Joint Official Liquidators over SPI Energy and its affairs, the cessation of the powers of the then-directors of SPI Energy, and that no acquisition or disposal of the company's shares on a going-forward basis shall be valid unless otherwise agreed by the Joint Official Liquidators and sanctioned by the Cayman Court. Further, the Form 8-K provided notice to all equity holders that "*it should be noted that the liquidation of the Company represents a formal insolvency process and that, pursuant to Cayman Islands law, ordinary equity holders rank behind unsecured creditors in the statutory priority of payments, in the event that distributable assets are recovered.*" *Id.*, at ¶ 13.

13.     At the time of the Winding Up Order, SPI Energy was subject to, *inter alia*, several pending litigation matters throughout the United States, as set forth on **Schedule B** hereto. The Petitioners continue their investigation of the underlying claims in each of the litigation matters involving SPI Energy. *Id.*, at ¶ 14.

6

II.     **The Petitioners' Appointment as Joint Official Liquidators.**

    a.  **Events Leading to Appointment.**

14.     The Cayman Proceeding was commenced by Streeterville Capital, LLC ("Petitioning Creditor") by application for a winding up order on the ground set out in section 93(a) of the Companies Act, that the Debtor was unable to pay its debts, inclusive of (i) obligations owed under four (4) separate convertible promissory notes (collectively, the "Notes") between the Debtor and the Petitioning Creditor with a total outstanding balance as of the commencement date of US$6,653,582.99, along with all accrued interest, contractual fees, charges and payment penalties arising under the Notes; and (ii) an arbitration award in favor of the Petitioning Creditor as against the Debtor dated November 6, 2023 in the sum of US$1,836,191.25 related to a default under a certain Securities Purchase Agreement dated April 8, 2022 by and between the Debtor and the Petitioning Creditor. *Id.*, at ¶ 15.

15.     After the initial filing of the winding up petition and prior to any Winding Up Order being entered by the Cayman Court, the Debtor and Petitioning Creditor entered into binding Deeds of Settlement and six (6) separate Addenda thereto, whereby, pursuant to the terms thereof, the Debtor agreed to make certain installment payments to the Petitioning Creditor.  Ultimately, the Debtor defaulted on its payment obligations and certain other obligations under the Deeds of Settlement and Addenda, resulting in an amended petition for the winding up of the Debtor before the Cayman Court. *Id.*, at ¶ 16.

16.     In addition to the default under the payment obligations, Petitioning Creditor cited further grounds for the winding up of the Debtor, including, *inter alia*, (i) the Debtor's management's failure to take steps to prevent the suspension and delisting of the Debtor's

7

NASDAQ shares and (ii) loss of all confidence in the Debtor's directors and management. *Id.*, at ¶ 17.

### b. Appointment of the Petitioners as Joint Official Liquidators

17.   On July 22, 2025, the Cayman Court entered the Winding Up Order in accordance with Cayman law to appoint the Petitioners as the Joint Official Liquidators of SPI Energy. *See* **Exhibit C** (Winding Up Order).

18.   The Winding Up Order ordered that SPI Energy "shall be wound up by the Court in accordance with the provisions of the Companies Act (as amended and revised)." *Id*, ¶ 4.

19.   Upon their appointment as Joint Official Liquidators, the Petitioners were authorized to exercise a broad range of powers in relation to the Debtor, including, among other things, the power to:

    a.   *Carry on SPI Energy's business so far as may be necessary for its beneficial winding up.*

    b.   *Engage staff to assist them in the performance of their functions.*

    c.   *Meet all reasonable disbursements reasonably incurred in connection with the performance of their duties.*

See **Exhibit C**.

20.   Schedule 3, Part I to the Companies Act sets out the powers that the Petitioners as joint official liquidators may exercise with the sanction of the Cayman Court (unless otherwise provided by the Winding Up Order). They include:

    a.   *Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.*

    b.   *Power to carry on the business of the company so far as may be necessary for its beneficial winding up.*

    c.   *Power to dispose of any property of the company to a person who is or was related to the company.*

4931-8932-5218, v. 1

d.    *Power to pay any class of creditors in full.*

e.    *Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.*

f.    *Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.*

g.    *Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.*

h.    *The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.*

i.    *The power to raise or borrow money and grant securities therefor over the property of the company.*

j.    *The power to engage staff (whether or not as employees of the company) to assist that person in the performance of that person's functions.*

k.    *The power to engage attorneys and other professionally qualified persons to assist that person in the performance of that person's functions.*

*See* Cayman Declaration, ¶ 25.

21.    Schedule 3, Part II of the Companies Act further provides that the Petitioners, as the Joint Official Liquidators, are permitted to exercise the following powers without the Cayman Court's sanction:

a.    *The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as that person considers necessary.*

b.    *The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.*

9

c. *The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against that person's estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.*

d. *The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.*

e. *The power to promote a scheme of arrangement pursuant to section 86.*

f. *The power to convene meetings of creditors and contributories.*

g. *The power to do all other things incidental to the exercise of that person's powers.*

*Id.,* ¶ 26.

22. Since their appointment on July 22, 2025, the Petitioners have taken numerous steps to wind-up SPI Energy and carry out their duties regarding the Cayman Proceeding from the Cayman Islands, including as follows:

a. Sought to obtain the books and records of SPI Energy and its affiliates and subsidiaries located around the world.

b. Attended to their statutory appointment obligations as laid out in the Cayman Companies Winding Up Rules (2023 Consolidation).

c. Undertook research to independently verify the current status and/or standing of key and related parties; and to consider available information in respect of other business ventures, companies or legal proceedings to which the Debtor and its affiliates and subsidiaries were or historically have been involved with, whether directly or indirectly.

d. Communicated with key and related parties, including parties that held the Debtor's key assets; current directors and professionals; and Cayman Islands and foreign banks to ascertain location of assets.

e. Engaged Cayman Islands' counsel to provide advice as required and assist in determining strategic and pragmatic solutions to achieve the Petitioners' objectives as detailed in the order appointing them.

f. Engaged foreign counsel to investigate key entities and assets.

10

g.  Provided necessary notice and met filing requirements for U.S. Securities and Exchange Commission ("SEC") and OTC stock exchange on behalf of the Debtor, including notice of the insolvency proceeding by filing a Form 8-K on July 22, 2025.

h.  Investigated pending litigation involving SPI Energy and its affiliates and subsidiaries, including retained counsel in the required jurisdictions to represent the interests of the Debtor and its affiliates and subsidiaries.

i.  Negotiated the sale of certain assets of SPI Energy, including, without limitation, the sale of SPI Energy's Australian subsidiary.

j.  Provided notice to all known creditors for the filing of claims in the Cayman Proceeding.

k.  Negotiated settlement of various claims.

l.  Been appointed as Joint Voluntary Liquidators in separate Cayman Islands proceedings for SPI Energy's indirect Cayman Islands subsidiary, Solarjuice Co. Ltd., and commenced petition for official winding up of Solarjuice Co. Ltd. before the Cayman Islands Court.

*See* Petitioners' Declaration, ¶ 21.

23.  In addition, the Petitioners have taken the following actions in jurisdictions worldwide based upon the global nature of SPI Energy's business:

**A.   Greek Operations/Business:**

• Established contact with the regional manager, Greek lawyers, and other stakeholders to understand operations, financial position, and key agreements for the Sinsin operations[3], as well as the Thermi operations;

• Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and cash flow forecasts;

• Reviewed cash flow forecasts and held numerous discussions with regional manager and their appointed accountants regarding the forecast used in settlement agreement negotiations;

---

[3] The Sinsin operations relate to a certain sale and purchase agreement between SPI Energy and certain of its Hong Kong subsidiaries (collectively the "SPI Group"), and Sinsin Europe Solar Asset Limited Partnership and certain affiliated parties (collectively, "Sinsin Group") dated September 4, 2014, whereby Sinsin Group sold certain shares in Sinsin Renewable Investment Limited ("SIRL") to SPI Group. SIRL owned four Greek companies which operated photovoltaic parks in Greece. This matter has been the subject of an arbitration proceeding in Malta, and litigation in both Greece and the United States.

11

4931-8932-5218, v. 1

- Engaged in numerous conversations with lawyers regarding settlement agreement;

- Reviewed monthly bank statements and payment requests;

- Engaged in numerous discussions with regional manager and Greek lawyers regarding bank accounts and opening of new accounts; and

- Engaged service provider in Greece regarding possible liquidation of one of the entities and possible assistance with tax advice.

**B.    Italian Operations/Business:**

- Established contact with the regional manager, Italian regional manager (assist on the banking side of things), and other stakeholders to understand operations, financial position, and key agreements;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns;

- Engaged in numerous discussions with regional manager regarding restoration of the PV plant and replacement of stolen cables, review of proposals and invoices, approve payments to relevant service provider;

- Reviewed monthly cash flow forecasts, reviewed schedule of monthly payments to be made, authorized payments; and

- Engaged service provider in Italy to assess tax situation and consequences of intercompany loans from Greek group entities.

**C.    Japanese Operations/Business:**

- Established contact with the regional manager and other stakeholders to understand operations, financial position, and key agreements;

- Requested and reviewed financial records, agreements, bank statements and litigation documents provided;

- Reviewed list of outstanding liabilities to be paid to lawyers regarding litigation;

- Reviewed and discussed financial information with regional manager; and

- Engaged service provider in the region to assess tax situation and provided assistance in communications with Japanese lawyers and tax authorities.

12

**D.      United Kingdom Operations/Business:**

- Established contact with the regional manager, auditor, Santander Bank, JV partner, and other stakeholders to understand operations, financial position, and key agreements;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns;

- Engaged with Santander Bank regarding the credit facility, escrow funds, repayment obligations, and operational payment releases;

- Reviewed and discussed financial forecasts/models, management agreements, Articles of Association, and JV agreement provisions; and

- Explored strategic and legal matters, including valuation providers, potential acquisition interest from the JV partner, and engaging UK lawyers to remove directors.

**E.      Canadian Operations/Business:**

- Established contact with the listed director of the Canadian entity within the group;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns of the Canadian operations;

- Engaged in discussions with director and Canadian accountants regarding tax refunds due and protection thereof;

- Arranged travel to Canada to (1) secure tax refund cheque from Canadian tax authorities, and (2) escort director to deposit cheque in the company's bank accounts; and

- Engaged service provider in Canada to assist in changing of director, tax advice regarding state and federal tax returns and refunds.

**F.      Australian Operations/Business:**

- Established contact with the management of the Australian entities regarding management buyout of the company;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns of the Australian operations;

13

- Engaged valuations specialists to perform valuation of the Australian entities and the relevant shareholding percentage held by the group;

- Engaged in numerous discussions with management, Australian lawyers, independent directors of parent company within the group regarding valuation of the entity, the share sale agreement and the mechanics of the sale;

- Engaged tax specialists in Australia to provide advice regarding tax consequences for the various entities regarding the share sale; and

- Sold shares held in Australian entities.

### G.    Hawaii Operations/Business:

- Engaged in discussions with management regarding Hawaii operations, financial position, agreement;

- Requested and reviewed financial records, agreements, bank statements, corporate documents;

- Reviewed all relevant documents and agreements regarding the various projects and pieces of land held as part of operations;

- Reviewed cash flow forecasts and requests for payments regarding O&M services and contracts to be renewed;

- Engaged in discussions with management regarding the projects and the litigation they are subject to – research the relevant lawsuits and have discussions on chances of success and effect on future Hawaii operations;

- Engaged with EastWest Bank regarding loans owed to bank and cash held in reserve.

### H.    Lovers Lane; EdisonFutures Projects:

- Reviewed of the Lovers Lane project, the connection agreements and ongoing operational issues;

- Reviewed all agreements and amended agreements – contacting management regarding state of operations and requesting additional document in order to close operation and request refund of initial connection setup costs;

- Obtained National Grid contact information in order to control communications with regards to cancelling of connection agreement and obtaining refund;

14

- Reviewed SEC filings detailing sale of shares held by Edisonfuture in Phoenix Motors Inc and the amount owed via promissory note;

- Numerous discussions with lawyers regarding default by other party regarding sale of Phoenix shares and next steps to call all debt owed;

- Discussions held with lawyers to act as proxy at Phoenix shareholders meetings; and

- Requested responses from management of Phoenix with regards to queries raised, objections noted and further requests regarding shareholder meetings

*Id., at* ¶ 22.

24.     Since their appointment as the Joint Official Liquidators of SPI Energy, the Petitioners have directed and supervised all of the aforementioned actions from the Cayman Islands. *Id.,* at ¶ 23.

## RELIEF REQUESTED

25.     The Petitioners request that this Court enter an order, substantially in the form of the Proposed Order attached as **Exhibit A** to the Motion, pursuant to sections 105(a), 1507(a), 1509(b)(2)-(3), 1515, 1517, 1521(a) and 1525(a) of the Bankruptcy Code:

   a. granting recognition to the Cayman Proceeding as a foreign main proceeding (as defined in section 1502(4) of the Bankruptcy Code), and granting all of the relief afforded to such proceedings, pursuant to sections 1517(a) and (b)(1) of the Bankruptcy Code;

   b. recognizing the Petitioners as "foreign representatives," as defined in section 101(24) of the Bankruptcy Code, in respect of the Cayman Proceeding;

   c. entrusting the Petitioners with the administration of any and all of the Debtor's assets within the territorial jurisdiction of the United States;

   d. providing that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment or modification of such order; and

   e. providing such other and further relief as the Court deems proper and just.

4931-8932-5218, v. 1

**BASIS FOR RELIEF**

**I.     The Cayman Proceeding Should Be Recognized as a Foreign Main Proceeding**

26.     The Cayman Proceeding is entitled to recognition as a foreign main proceeding under chapter 15 of the Bankruptcy Code. Section 1517(a) of the Bankruptcy Code provides that, subject to section 1506 of the Bankruptcy Code, a court "shall" enter an order granting recognition of a foreign proceeding if:

(1)     such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2)     the foreign representative applying for recognition is a person or body; and

(3)     the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a); *see* H.R. Rep. No. 109-31, pt 1, at 113 (2005) ("The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings… The requirements of this section… are all that must be fulfilled to attain recognition."). Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized…(1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Here, all of the requirements for recognition of the Cayman Proceeding as a foreign main proceeding are satisfied.

**a.     The Cayman Proceeding Constitutes a "Foreign Proceeding"**

27.     Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

[A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

28.     Based on this definition, courts have held that a "foreign proceeding" requires:

16

(i)     [the existence of] a proceeding;

(ii)    that is either judicial or administrative;

(iii)   that is collective in nature;

(iv)    that is in a foreign country;

(v)     that is authorized or conducted under a law related to insolvency or the adjustment of debts;

(vi)    in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and

(vii)   which proceeding is for the purpose of reorganization or liquidation.

*In re ABC Learning Ctcs. Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013). The Cayman Proceeding satisfies all of these elements, and thus constitutes a "foreign proceeding" under section 101(23).

29.     The Cayman Proceeding was commenced under Cayman Islands law, including the Companies Act and the Companies Winding Up Rules. Cayman Islands law governs corporate insolvency in the Cayman Islands. Key insolvency procedures provided for in the Laws of the Cayman Islands include provisional liquidation, official liquidation, voluntary liquidations, schemes of arrangement (which is not strictly an insolvency procedure, but is often employed in respect of insolvent companies) as well as receivership (which is a procedure that may be instigated by a secured creditor pursuant to the terms of its security and not by the Cayman Court). "A collective proceeding is one that considers the rights and obligations of all creditors. This is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *Betcorp,* 400 B.R. 266, 281 (Bankr. D. Nev. 2009). Official liquidation under Cayman Islands law is a "collective judicial or administrative proceeding" within the meaning of section 101(23) of the Bankruptcy Code as such proceeding is not for the benefit of any single creditor, but rather operates to resolve and determine the rights of all claimants and

17

stakeholders, *i.e.*, the creditor body as a whole.  *See* Cayman Declaration at ¶ 35 (explaining Section 110(1)(a) of the Companies Act (as defined therein) states that 'it is the function of an official liquidator to collect, realize and distribute the assets of the company to its creditors….");  *see also* Companies Act § 140(1) ("Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu….*").

30.     The Cayman Proceeding also satisfies the requirement that the assets of the Debtor be subject to the control or supervision of a foreign court. The Petitioners, as Joint Official Liquidators, act as officers of the Cayman Court.  *See* Cayman Declaration at ¶ 33.  Cayman law and the Winding Up Order of the Cayman Court appointing the Petitioners as joint official liquidators provide that certain of the powers of a liquidator, including the power to compromise claims, may be exercised only with the sanction of the Cayman Court. *Id.* at ¶ 25.

31.     Bankruptcy courts have recognized that collective insolvency proceedings under the supervision of the Courts of the Cayman Islands are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code. *See, e.g., In re Modern Land (China) Co.*, 641 B.R. 768 (Bankr. S.D.N.Y. 2022); *In re Millard*, 501 B.R. 644 (Bankr. S.D.N.Y. 2013); *In re Saad Investment Finance Co. (No. 5) Ltd.,* No. 09-13985 (Bankr. D. Del. Dec. 17, 2009) [Docket No. 47]; *In re SPhinX, Ltd.,* 371 B.R. 10 (S.D.N.Y. 2007).

32.     There can be no doubt, therefore, that the Cayman Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

**b.      The Cayman Proceeding Is a "Foreign Main Proceeding"**

33.     The Cayman Proceeding also qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). The relevant time period to determine

the location of a debtor's "center of main interests" ("COMI") is the date on which the chapter 15 petition is filed.  *See e.g. Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013); *see also In re Ir. Bank Resolution Corp. (In Special Liquidation)*, Case No. 13-12159 (CSS), 2014 Bankr. LEXIS 1990, at *36 (Bankr. D. Del. Apr. 30, 2014).

34.     While the Bankruptcy Code does not define COMI, section 1516(c) states that, in the absence of evidence to the contrary, COMI is presumed to be the location of the debtor's registered office. 11 U.S.C. §1516(c); *see also In re Tri-Continental Exch. Ltd*., 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) ("In effect, the registered office (or place of incorporation) is evidence that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center of main interests.'"). Section 1516(c) thus creates a rebuttable presumption in favor of the location of the debtor's registered office as the debtor's center of main interests. SPI Energy's registered office is located in the Cayman Islands since 2015.

35.     Courts have developed a list of potentially relevant factors to consider in determining whether such presumption has been rebutted: the location of the debtor's headquarters, the location of those who actually manage the debtor, the location of the debtor's primary assets, the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case, and/or the jurisdiction whose law would apply to the most disputes. *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) *citing In re Bear Stearns,* 389 B.R. 325 (S.D.N.Y. 2008).

36.     Courts have cautioned that "this nonexclusive list is a helpful guide, but consideration of these specific factors is neither required nor dispositive." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013). Rather, "any relevant activities, including liquidation activities and administrative functions, may be considered in the COMI analysis." *Id; see also In*

*re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 420 (Bankr. S.D.N.Y. 2014) (holding COMI had shifted to the Cayman Islands from China based on the liquidation activities and broad authority of the Joint Provisional Liquidators); *In re British Am. Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 723 (Bankr. S.D. Fla. 2010) (holding COMI shifted to the BVI based on liquidator's activities as sole person responsible for the management and control of the assets of the debtor for a period of 14 months).

37.     The Court of Appeals for the Second Circuit resolved a split among the courts in holding that, absent evidence that the COMI was manipulated in bad faith, these factors and activities should be analyzed as of the time of filing of the debtor's chapter 15 petition. *In re Fairfield Sentry Ltd.*, 714 F.3d at 133 ("We conclude that a debtor's COMI is determined as of the time of the filing of the Chapter 15 petition."). Indeed, the Bankruptcy Code uses the present tense with respect to determination of COMI, defining "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor *has* the center of its main interests." 11 U.S.C. §1517(b)(1) (emphasis added). Consistent with this interpretation, most courts have determined COMI based on the date of the filing of the chapter 15 petition. *In re Fairfield Sentry Ltd.*, 714 F.3d at 135 ("Most courts in this Circuit and throughout the country appear to have examined a debtor's COMI as of the time of the Chapter 15 petition.") (citing cases); s*ee also Lavie v. Ran*, 406 B.R. 277, 283 (S.D.Tex 2009) ("Chapter 15 requires the U.S. court to make an independent finding *at the time the petition for recognition is filed* in the U.S. court, rather than hindsight….") (emphasis in original), *aff'd, In re Ran*, 607 F. 3d 1017, 1025-26 (5th Cir. 2010); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 419 (Bankr. S.D.N.Y. 2014) ("[T]he Debtor's COMI on the date of the commencement of the chapter 15 case was the Cayman Islands."); *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 910 (Bankr. S.D. Fla. 2010) (explaining that the language of the

20

Bankruptcy Code requires that the temporal focus "for purposes of a court making a determination under section 1517(b)(1), can be no earlier than the date the chapter 15 petition was filed.").

38.     SPI Energy historically conducted operational and management functions from the United States, including California.  However, following the entry of the Winding Up Order and the appointment of the Petitioners as independent officeholders of the Cayman Court, the center of actual administration, control, creditor engagement, books-and-records access, liquidation decision-making, and litigation oversight shifted to the Cayman Islands.  It is that present state of affairs, as of the date of the filing of the Chapter 15 Petition, that governs the COMI analysis in this case.  *See* Petitioners' Declaration, ¶ 24.

39.     Determination of COMI based on the present facts and circumstances, without reference to the debtor's prior operational history, promotes consistency in COMI determinations. As stated by the court in *Betcorp:*

> [A]n inquiry into the debtor's past interests could lead to a denial of recognition in a country where a debtor's interests are truly centered, merely because of past activities. This frustrates two of the purposes of the COMI inquiry – it decreases the effectiveness of the insolvency proceeding for which recognition is sought, and it may lead to a sub-optimal distribution of the debtor's assets, inasmuch as non-recognition where recognition is due may forestall needed inter-nation cooperation.

400 B.R. at 291 (internal citations and footnotes omitted).

40.     In *Modern Land*, the debtor was a holding company for a large group of businesses, most of which were incorporated in the Cayman Islands or the British Virgin Islands and conducted business in the People's Republic of China.  641 B.R. at 772.  The court granted a motion for recognition of a Cayman proceeding as a foreign main proceeding recognizing that the debtor's COMI was in the Cayman Islands after "consider[ing] the totality of the circumstances before it, including the goals of Chapter 15, the Scheme Creditors' expectations and intentions, the judicial role in the Cayman Scheme, the function of the Cayman Scheme Chairperson, the insolvency

activities in the Caymans, Cayman choice of law principles and the Debtor's good-faith petition for recognition of the Cayman Proceeding." *Id.* at 786-87.

41.     Here, application of these legal principles mandates a determination that SPI Energy's COMI is in the Cayman Islands. *See* Petitioners' Declaration, ¶ 25.

42.     *Registered Office/Place of Incorporation.*  As noted, SPI Energy is registered in the Cayman Islands, thereby creating a statutory presumption that the Cayman Islands is the Debtor's COMI.  From 2015 to the present, the Debtor's registered office has at all times been in the Cayman Islands.  This fact creates a legal presumption in favor of the Cayman Islands as SPI Energy's COMI.   That presumption is reinforced, rather than rebutted, by the post-appointment centralization of the Debtor's affairs in the Cayman Islands.

43.     *Location of Headquarters.*  Since the entry of the Winding Up Order, SPI Energy has no longer had operative headquarters in California, and its affairs have instead been administered from the Petitioners' offices in the Cayman Islands.  All official and material decisions taken on behalf of SPI Energy since the Winding Up Order, including decisions concerning asset realizations, litigation strategy, creditor engagement, and regulatory communications, have been directed by the Petitioners from the Cayman Islands. While SPI Energy formerly had an office in California prior to the Petitioners' appointment, the lease terminated and the landlord obtained a judgment for possession as of December 20, 2024.

44.     *Location of Managers.*  Management and control of SPI Energy's affairs now resides exclusively with the Petitioners, who operate full-time from the Cayman Islands. Significantly, all of the Debtor's interactions with creditors and other third parties, including the SEC and other regulatory bodies, are conducted from the Cayman Islands.  Since the Winding Up

22

Order, the Petitioners have attended to the ongoing affairs of the Debtor, including as set forth above in Paragraphs 22 and 23.

45.     *Location of Company Assets and Operations.* SPI Energy is a Cayman Islands registered company, which acts as the ultimate holding company of a group of companies comprising the Debtor and its subsidiaries.  The Debtor operates its subsidiaries which conduct business around the world, including North America, Australia, Asia, United Kingdom, Italy, Greece and Japan.  In 2015, the Debtor registered in the Cayman Islands and has been subject to the Companies Laws of the Cayman Islands.  The Debtor's operations and assets are geographically dispersed across multiple jurisdictions; however, the administration and control of those operations for insolvency purposes are centralized in the Cayman Islands under the direction of the Petitioners.

46.     *Location of Creditors.* The Cayman Proceeding was commenced by Streeterville Capital, the Debtor's largest known creditor, due to a default under the Deeds of Settlement and six (6) separate Addenda thereto, all of which were subject to Cayman Islands law.  All other purported creditors of the Debtor are geographically dispersed around the globe.  The Petitioners have administered the creditor process from the Cayman Islands and have issued creditor communications from the Cayman Islands. To date, eight (8) proofs of debt have been submitted in the Cayman Proceeding, including one (1) from a Cayman Islands-based creditor. No creditor has objected to the Cayman Islands as the forum for the Debtor's insolvency proceeding. As noted above, upon their appointment, the Petitioners filed a Form 8-K with the SEC providing notice to stakeholders of the Cayman Proceeding. The Petitioners are still investigating the creditors of the Debtor, and have made efforts to provide notice to all creditors of the pending Cayman Proceeding.

47.    *Liquidation Activities and Administrative Functions*. Since their appointment as Joint Official Liquidators, the Petitioners have exercised centralized control over the Debtor's liquidation from the Cayman Islands.  Their Cayman-based activities have included investigating SPI Energy's business affairs including the operations of the Debtor's wholly owned direct and indirect subsidiaries and affiliates in the multiple jurisdictions worldwide, collecting and reviewing books and records, and engaging with creditors and stakeholders. These activities have also included managing regulatory and public notice obligations, retaining counsel in relevant jurisdictions, overseeing pending litigation, implementing asset realization efforts, investigating the Debtor's corporate and financial affairs, and coordinating related group insolvency steps. *See e.g.* Paragraphs 22 and 23 hereof.  Given the Petitioners' role and the manner in which third parties have dealt with the Debtor since their appointment, the Cayman Islands is properly regarded as the center of the Debtor's main interests.  The goal of the Cayman Proceeding is to effectuate the orderly liquidation and administration of SPI Energy and to coordinate related steps affecting the SPI Group Companies where appropriate, all for the benefit of creditors and interested parties. The actions taken in the Cayman Islands were not taken for purposes of manipulating the Debtor's COMI to be in the Cayman Islands; rather, these actions were consistent with their obligations under the Winding Up Order and under Cayman Islands law, and they would have taken these actions even in the absence of a chapter 15 case.  *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 420 (holding COMI was in the Cayman Islands based on findings that Joint Provisional Liquidators' actions there were "consistent with the Appointment Order and their roles in the Foreign Proceeding and [that] they would have taken these actions even if they had never intended to file a chapter 15 case.").  Given the Petitioners' broad authority over the Debtor under the Winding Up Order, it is submitted that a finding that the Debtor's COMI is in the Cayman Islands

24

is consistent with the current expectations of third parties. *See In re British Am. Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 723 (Bankr. S.D. Fla. 2010) ("In light of the Petitioner's concerted efforts on behalf of the Debtor, and the extended passage of time since his appointment [of 14 months], third parties must necessarily consider the Petitioner's offices in the British Virgin Islands to be the location of the Debtor's COMI.").

48.     While SPI Energy is a party to proceedings in the United States and elsewhere, those matters are being centrally managed and coordinated by the Petitioners from the Cayman Islands as part of the overall administration of the estate.

49.     Based upon the foregoing, it is submitted that SPI Energy's COMI is the Cayman Islands. The Cayman Proceeding therefore fully qualifies for recognition as a foreign main proceeding.

**c.     The Petitioners Satisfy the Requirements for "Foreign Representatives" Under Section 101(24) of the Bankruptcy Code**

50.     The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a person or body.  *See* 11 U.S.C. § 1517(a)(2).

51.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

52.     Under section 101(41) of the Bankruptcy Code, the "term 'person' includes [an] individual . . . ." 11 U.S.C. § 101(41).  Here, the Petitioners are individuals.

25

53.     Pursuant to the Winding Up Order, the Petitioners have been appointed as the Joint Official Liquidators of the Debtor.  The Winding Up Order specifically directs SPI Energy shall be wound up in accordance with the provisions of the Companies Act and authorizes the Joint Official Liquidators to "carry on SPI Energy's business so far as necessary for its beneficial winding up."

54.     Thus, Petitioners have met the requirements of section 101(24) of the Bankruptcy Code and are the Debtor's "foreign representatives" as defined thereunder.  *See In re SPhinX, Ltd.*, 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) (noting that the foreign representatives had submitted a "copy of the Cayman Court's order appointing them to administer the Debtors' winding up under the Companies Act and authorizing their commencement of these chapter 15 cases, thereby satisfying Bankruptcy Code sections 101(24) and 1515(b).").

**d.      The Chapter 15 Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code**

55.     The third and final requirement of section 1517(a) is that "the petition meets the requirements of section 1515."  11 U.S.C. § 1517(a)(3).  This case was duly and properly commenced as required by sections 1504 and 1509(a) of the Bankruptcy Code, by the filing of the Petition for Recognition in accordance with section 1515(a) of the Bankruptcy Code, which was accompanied by all documents and information required by sections 1515(b) and (c).  *See Zhejiang Topoint Photovoltaic Co. v. Zhi Chen (In re Zhejiang Topoint Photovoltaic Co.)*, 600 B.R. 312, 317 (Bankr. D.N.J. 2019) ("A case under [chapter 15] is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515."); *In re Ir. Bank Resolution Corp. (In Special Liquidation)*, Case No. 13-12159 (CSS)*, 2014 Bankr. LEXIS 1990, at *54 (Bankr. D. Del.

4931-8932-5218, v. 1

Apr. 30, 2014) ("The final requirement for recognition under § 1517 is that the petition for recognition meets the procedural requirements of [section] 1515").

56.     In accordance with section 1515(b)(1) of the Bankruptcy Code, a certified copy of the Winding Up Order commencing the Cayman Proceeding and appointing Petitioners as Joint Official Liquidators with respect thereto has been filed with the Chapter 15 Petition.  *See* Petition, **Exhibit A** [D.I. 1].

57.     In accordance with section 1515(c) of the Bankruptcy Code, it is submitted that the Cayman Proceeding is the only known pending "foreign proceeding" with respect to the Debtor.

58.     Accordingly, the requirements of section 1515, and all requirements of section 1517(a), have been satisfied.  Thus, it is respectfully submitted that entry of an order recognizing the Cayman Proceeding as a foreign main proceeding is appropriate.

## NOTICE

59.     In accordance with Bankruptcy Rule 2002(q), the Petitioners will provide notice of this Motion to (i) the Debtor; (ii) the Office of the United States Trustee for Region 2; and (iii) the parties entitled to notice as set forth in the *Motion for Entry of Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007*, filed contemporaneously herewith. The Petitioners submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

60.     No prior request for the relief sought in this Motion has been made to this or to any other court.

27

**CONCLUSION**

For all the foregoing reasons, the Petitioners respectfully request that the Court enter an order (a) recognizing the Petitioners as the Debtor's "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code; (b) recognizing the Cayman Proceeding as a "foreign main proceeding" pursuant to Sections 1515, 1517, and 1520 of the Bankruptcy Code; and (c) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 17, 2026
       Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

By:  */s/ Zhao Liu*
Frederick B. Rosner (DE #3995)
Zhao (Ruby) Liu (DE #6436)
824 North Market Street, Suite 810
Wilmington, DE 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com
liu@teamrosner.com

-and-

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS LLP**

John E. Jureller, Jr., Esq.
(*pro hac vice* forthcoming)
Brendan M. Scott, Esq.
(*pro hac vice* forthcoming)
Lauren C. Kiss, Esq.
(*pro hac vice* forthcoming)
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
JJureller@Klestadt.com
BScott@Klestadt.com
LKiss@Klestadt.com

*Attorneys for the Petitioners*

4931-8932-5218, v. 1