**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| SPI Energy Co., Ltd., | Case No. 26-10536 |
| Debtor in a foreign proceeding.[1] | |

**DECLARATION OF GRAHAM ROBINSON, ONE OF THE JOINT OFFICIAL
LIQUIDATORS OF SPI ENERGY CO., LTD. (IN OFFICIAL LIQUIDATION),
IN SUPPORT OF DEBTOR'S CHAPTER 15 PETITION FOR
ENTRY OF ORDER RECOGNIZING FOREIGN MAIN PROCEEDING
AND GRANTING ADDITIONAL RELIEF**

I, GRAHAM ROBINSON, being duly sworn, under penalty of perjury, hereby declare as follows:

1.      I am a Managing Director – Insolvency at Crowe Cayman Ltd., located at 94 Solaris Avenue, P.O. Box 30851, Camana Bay, Grand Cayman KY1-1204, Cayman Islands.

2.      Pursuant to the Winding Up Order (defined later herein), I, along with James Parkinson, were appointed as a Joint Official Liquidators of SPI Energy Co., Ltd. (In Official Liquidation), the above-captioned debtor ("**SPI Energy**" and/or the "**Debtor**") in an insolvency proceeding (the "**Cayman Proceeding**") pending before the Grand Court of the Cayman Islands, Financial Services Division (the "**Cayman Court**"). True and correct copies of the documents evidencing commencement of the Cayman Proceedings are attached as **Exhibit A** to the Official Form B 401 *Chapter 15 Petition for Recognition of a Foreign Main Proceeding* (the "**Petition**").

---

[1] The Debtor in this chapter 15 case, along with the last four digits of the Debtor's Cayman Islands Registration Number, is: SPI Energy Co., Ltd. (in Official Liquidation) (9333). The location of the Debtor's service address for the purpose of this chapter 15 case is c/o Crowe Cayman Ltd., 94 Solaris Avenue, PO Box 30851, Camana Bay, Grand Cayman KY1-1204 Cayman Islands.

3.      I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration (this "**Declaration**"). I make this Declaration in support of (i) the Petition, (ii) the *Petitioners' Motion for (I) Recognition of a Foreign Main Proceeding and (II) Related Relief* (the "**Motion**"); and (iii) the *Motion for Entry of Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007* (the "**Scheduling and Notice Motion**").   In preparing this Declaration, I have reviewed the documents submitted in this chapter 15 case, specifically the Petition, the Motion, and Scheduling and Notice Motion.

4.      The facts and matters contained in this Declaration and the Motion are true and correct to the best of my information, knowledge and belief.

## BACKGROUND

### I.    The Debtor and Related Entities

5.      SPI Energy is a Cayman Islands company that was incorporated as an exempted company on May 4, 2015, under registration number 299333.  Its registered office is currently c/o 373 LTD. (T/A "BOOKERS"), PO Box 31503, Grand Pavilion Commercial Centre, 802 West Bay Road, KY1-1207, Grand Cayman, Cayman Islands.  A copy of a January 5, 2024 Cayman Islands Registrar of Companies Search Report for SPI Energy and a copy of SPI Energy's July 29, 2025 Certificate of Restoration are attached to the Motion as **Exhibit B**.

6.      SPI Energy is a global renewable energy company and provider of solar storage and electric vehicle solutions.  The business was founded in 2006 in Roseville, California and at relevant times had its headquarters in Sacramento, California.  As noted above, as of 2015, SPI Energy was registered in the Cayman Islands.

2

7.      SPI Energy marketed itself as an established renewable energy player with global operations in key markets in Asia, Australia, North America and Europe.  As recently as 2022, SPI Energy listed assets of $231 million with revenue of $271 million in 2022.

8.      At relevant times, SPI Energy had three core divisions: (A) Solarjuice, which engages in solar wholesale distribution, residential solar and roofing installation and solar module manufacturing; (B) SPI Solar and Orange Power, which operates a commercial and utility solar division, and (C) EdisonFutures / Phoenix Motors EV division.

- **<u>Solarjuice Division</u>**: The Solarjuice division offered renewable energy systems solutions for residential and small commercial markets and has operations in the Asia Pacific (including Australia) and North America.
- **<u>SPI Solar / Orange Power Division</u>**: The SPI Solar commercial and utility division provided a full spectrum of EPC service (engineering, procurement and construction) to third party project developers, and developed, owned and operated solar projects that sold electricity to the grid in multiple regions including the U.S., U.K., and Europe.
- **<u>EdisonFutures / Phoenix Motors Division</u>**: Phoenix Motor is marketed as a leader in medium duty commercial electric vehicles, developing EV charger solutions, electric pickup trucks, electric forklifts, and other EV products.

9.      In addition to the core divisions, SPI Energy also held subsidiaries which established or invested in operations focused on green hydrogen and fossil fuels cells, electric scooters, solar powered data mining and solar powered agriculture (including CBD and hemp production).

10.     At all relevant times, SPI Energy was a holding company, which maintained global operations through its direct and indirect wholly owned subsidiaries located and operating in North America, Australia, Asia, United Kingdom, Italy, Greece and Japan.  An outline of SPI Energy's group company and global subsidiaries is set forth on **<u>Schedule A</u>** to the Motion (collectively

referred to as the "SPI Group" or "SPI Group Companies").  Although SPI Energy historically conducted substantial management and operating functions from the United States, that historical operating model no longer reflects the location from which the Debtor's affairs are administered following the Petitioners' appointment.  Based upon the Petitioners' investigation to date, the majority of SPI Energy's U.S.-based subsidiaries have not been actively operating since the date of the Winding Up Order.  Petitioners' investigation of the Debtor's business organization and operations continues but it has been significantly delayed due to the lack of cooperation from SPI Energy's former management and employees.  It is expected that the recognition of the Cayman Proceeding will assist the Petitioners in obtaining more complete information on the subsidiaries and other affiliated entities in the SPI Group Companies.

11.     SPI Energy's common shares are listed for trading on the OTC [Over-The-Counter] Market under ticket: SPIEF.  The Debtor's common shares formerly were listed for trading on NASDAQ under ticket: SPI.

12.     On January 13, 2025, the Debtor received a notification letter from The NASDAQ Stock Market LLC (the "NASDAQ Letter") stating that NASDAQ had determined to delist the company's securities from The NASDAQ Capital Market due to violation of Listing Rules 5250(c)(1) (reporting obligations) and 5550(a)(2) (the bid price requirement), as well as the company's failure to hold an annual meeting of the shareholders.  The NASDAQ Letter further notified the company that trading in its securities would be suspended effective as of the opening of trading on January 15, 2025.  There are currently 22,300,000 ordinary shares issued and trading, with 2,000,000 shares held by insiders.

13.     On July 22, 2025, the Petitioners, as the Joint Official Liquidators, filed a Form 8-K with the SEC, providing notice to all interested parties including any equity holders that SPI

Energy was placed in Official Liquidation by the Winding Up Order of the Cayman Court, the appointment of the Petitioners as the Joint Official Liquidators over SPI Energy and its affairs, the cessation of the powers of the then-directors of SPI Energy, and that no acquisition or disposal of the company's shares on a going-forward basis shall be valid unless otherwise agreed by the Joint Official Liquidators and sanctioned by the Cayman Court.   Further, the Form 8-K provided notice to all equity holders that "*it should be noted that the liquidation of the Company represents a formal insolvency process and that, pursuant to Cayman Islands law, ordinary equity holders rank behind unsecured creditors in the statutory priority of payments, in the event that distributable assets are recovered.*"

14.     At the time of the Winding Up Order, SPI Energy was subject to, *inter alia*, several pending litigation matters throughout the United States, as set forth on **Schedule B** to the Motion. The Petitioners continue their investigation of the underlying claims in each of the litigation matters involving SPI Energy.

**II.     The Petitioners' Appointment as Joint Official Liquidators.**

      **a.   Events Leading to Appointment.**

15.     The Cayman Proceeding was commenced by Streeterville Capital, LLC ("Petitioning Creditor") by application for a winding up order on the ground set out in section 93(a) of the Companies Act, that the Debtor was unable to pay its debts, inclusive of (i) obligations owed under four (4) separate convertible promissory notes (collectively, the "Notes") between the Debtor and the Petitioning Creditor with a total outstanding balance as of the commencement date of US$6,653,582.99, along with all accrued interest, contractual fees, charges and payment penalties arising under the Notes; and (ii) an arbitration award in favor of the Petitioning Creditor as against the Debtor dated November 6, 2023 in the sum of US$1,836,191.25 related to a default

under a certain Securities Purchase Agreement dated April 8, 2022 by and between the Debtor and the Petitioning Creditor.

16.    After the initial filing of the winding up petition and prior to any Winding Up Order being entered by the Cayman Court, the Debtor and Petitioning Creditor entered into binding Deeds of Settlement and six (6) separate Addenda thereto, whereby, pursuant to the terms thereof, the Debtor agreed to make certain installment payments to the Petitioning Creditor.   Ultimately, the Debtor defaulted on its payment obligations and certain other obligations under the Deeds of Settlement and Addenda, resulting in an amended petition for the winding up of the Debtor before the Cayman Court.

17.    In addition to the default under the payment obligations, Petitioning Creditor cited further grounds for the winding up of the Debtor, including, *inter alia*, (i) the Debtor's management's failure to take steps to prevent the suspension and delisting of the Debtor's NASDAQ shares and (ii) loss of all confidence in the Debtor's directors and management.

**b.  Appointment of the Petitioners as Joint Official Liquidators**

18.    On July 22, 2025, the Cayman Court entered the Winding Up Order in accordance with Cayman law to appoint the Petitioners as the Joint Official Liquidators of SPI Energy.  *See* **Exhibit C** to Motion (Winding Up Order).

19.    The Winding Up Order ordered that SPI Energy "shall be wound up by the Court in accordance with the provisions of the Companies Act (as amended and revised)." *Id*, ¶ 4.

20.    Upon their appointment as Joint Official Liquidators, the Petitioners were authorized to exercise a broad range of powers in relation to the Debtor, including, among other things, the power to:

> (i)    *Carry on SPI Energy's business so far as may be necessary for its beneficial winding up.*

(ii)     *Engage staff to assist them in the performance of their functions.*

(iii)    *Meet all reasonable disbursements reasonably incurred in connection with the performance of their duties.*

*Id.*

21.     Since their appointment on July 22, 2025, the Petitioners have taken numerous steps to wind-up SPI Energy and carry out their duties regarding the Cayman Proceeding from the Cayman Islands, including as follows:

(i)     Sought to obtain the books and records of SPI Energy and its affiliates and subsidiaries located around the world.

(ii)    Attended to their statutory appointment obligations as laid out in the Cayman Companies Winding Up Rules (2023 Consolidation).

(iii)   Undertook research to independently verify the current status and/or standing of key and related parties; and to consider available information in respect of other business ventures, companies or legal proceedings to which the Debtor and its affiliates and subsidiaries were or historically have been involved with, whether directly or indirectly.

(iv)    Communicated with key and related parties, including parties that held the Debtor's key assets; current directors and professionals; and Cayman Islands and foreign banks to ascertain location of assets.

(v)     Engaged Cayman Islands' counsel to provide advice as required and assist in determining strategic and pragmatic solutions to achieve the Petitioners' objectives as detailed in the order appointing them.

(vi)    Engaged foreign counsel to investigate key entities and assets.

(vii)   Provided necessary notice and met filing requirements for U.S. Securities and Exchange Commission ("SEC") and OTC stock exchange on behalf of the Debtor, including notice of the insolvency proceeding by filing a Form 8-K on July 22, 2025.

(viii)  Investigated pending litigation involving SPI Energy and its affiliates and subsidiaries, including retained counsel in the required jurisdictions to represent the interests of the Debtor and its affiliates and subsidiaries.

(ix)    Negotiated the sale of certain assets of SPI Energy, including, without limitation, the sale of SPI Energy's Australian subsidiary.

(x)     Provided notice to all known creditors for the filing of claims in the Cayman Proceeding.

(xi)     Negotiated settlement of various claims.

(xii)     Been appointed as Joint Voluntary Liquidators in separate Cayman Islands proceedings for SPI Energy's indirect Cayman Islands subsidiary, Solarjuice Co. Ltd., and commenced petition for official winding up of Solarjuice Co. Ltd. before the Cayman Islands Court.

22.     In addition, the Petitioners have taken the following actions in jurisdictions worldwide based upon the global nature of SPI Energy's business:

### (A)     Greek Operations/Business:

• Established contact with the regional manager, Greek lawyers, and other stakeholders to understand operations, financial position, and key agreements for the Sinsin operations[2], as well as the Thermi operations;

• Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and cash flow forecasts;

• Reviewed cash flow forecasts and held numerous discussions with regional manager and their appointed accountants regarding the forecast used in settlement agreement negotiations;

• Engaged in numerous conversations with lawyers regarding settlement agreement;

• Reviewed monthly bank statements and payment requests;

• Engaged in numerous discussions with regional manager and Greek lawyers regarding bank accounts and opening of new accounts; and

• Engaged service provider in Greece regarding possible liquidation of one of the entities and possible assistance with tax advice.

### (B)     Italian Operations/Business:

---

[2] The Sinsin operations relate to a certain sale and purchase agreement between SPI Energy and certain of its Hong Kong subsidiaries (collectively the "SPI Group"), and Sinsin Europe Solar Asset Limited Partnership and certain affiliated parties (collectively, "Sinsin Group") dated September 4, 2014, whereby Sinsin Group sold certain shares in Sinsin Renewable Investment Limited ("SIRL") to SPI Group. SIRL owned four Greek companies which operated photovoltaic parks in Greece. This matter has been the subject of an arbitration proceeding in Malta, and litigation in both Greece and the United States.

- Established contact with the regional manager, Italian regional manager (assist on the banking side of things), and other stakeholders to understand operations, financial position, and key agreements;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns;

- Engaged in numerous discussions with regional manager regarding restoration of the PV plant and replacement of stolen cables, review of proposals and invoices, approve payments to relevant service provider;

- Reviewed monthly cash flow forecasts, reviewed schedule of monthly payments to be made, authorized payments; and

- Engaged service provider in Italy to assess tax situation and consequences of intercompany loans from Greek group entities.

### (C)   Japanese Operations/Business:

- Established contact with the regional manager and other stakeholders to understand operations, financial position, and key agreements;

- Requested and reviewed financial records, agreements, bank statements and litigation documents provided;

- Reviewed list of outstanding liabilities to be paid to lawyers regarding litigation;

- Reviewed and discussed financial information with regional manager; and

- Engaged service provider in the region to assess tax situation and provided assistance in communications with Japanese lawyers and tax authorities.

### (D)   United Kingdom Operations/Business:

- Established contact with the regional manager, auditor, Santander Bank, JV partner, and other stakeholders to understand operations, financial position, and key agreements;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns;

- Engaged with Santander Bank regarding the credit facility, escrow funds, repayment obligations, and operational payment releases;

- Reviewed and discussed financial forecasts/models, management agreements, Articles of Association, and JV agreement provisions; and

- Explored strategic and legal matters, including valuation providers, potential acquisition interest from the JV partner, and engaging UK lawyers to remove directors.

### (E)   Canadian Operations/Business:

- Established contact with the listed director of the Canadian entity within the group;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns of the Canadian operations;

- Engaged in discussions with director and Canadian accountants regarding tax refunds due and protection thereof;

- Arranged travel to Canada to (1) secure tax refund cheque from Canadian tax authorities, and (2) escort director to deposit cheque in the company's bank accounts; and

- Engaged service provider in Canada to assist in changing of director, tax advice regarding state and federal tax returns and refunds.

### (F)   Australian Operations/Business:

- Established contact with the management of the Australian entities regarding management buyout of the company;

- Requested and reviewed financial records, agreements, bank statements, draft audited accounts, and tax returns of the Australian operations;

- Engaged valuations specialists to perform valuation of the Australian entities and the relevant shareholding percentage held by the group;

- Engaged in numerous discussions with management, Australian lawyers, independent directors of parent company within the group regarding valuation of the entity, the share sale agreement and the mechanics of the sale;

- Engaged tax specialists in Australia to provide advice regarding tax consequences for the various entities regarding the share sale; and

- Sold shares held in Australian entities.

### (G)  **Hawaii Operations/Business:**

- Engaged in discussions with management regarding Hawaii operations, financial position, agreement;

- Requested and reviewed financial records, agreements, bank statements, corporate documents;

- Reviewed all relevant documents and agreements regarding the various projects and pieces of land held as part of operations;

- Reviewed cash flow forecasts and requests for payments regarding O&M services and contracts to be renewed;

- Engaged in discussions with management regarding the projects and the litigation they are subject to – research the relevant lawsuits and have discussions on chances of success and effect on future Hawaii operations;

- Engaged with EastWest Bank regarding loans owed to bank and cash held in reserve.

### (H)  **Lovers Lane; EdisonFutures Projects:**

- Reviewed of the Lovers Lane project, the connection agreements and ongoing operational issues;

- Reviewed all agreements and amended agreements – contacting management regarding state of operations and requesting additional document in order to close operation and request refund of initial connection setup costs;

- Obtained National Grid contact information in order to control communications with regards to cancelling of connection agreement and obtaining refund;

- Reviewed SEC filings detailing sale of shares held by Edisonfuture in Phoenix Motors Inc and the amount owed via promissory note;

- Numerous discussions with lawyers regarding default by other party regarding sale of Phoenix shares and next steps to call all debt owed;

- Discussions held with lawyers to act as proxy at Phoenix shareholders meetings; and

- Requested responses from management of Phoenix with regards to queries raised, objections noted and further requests regarding shareholder meetings

23.     Since their appointment as the Joint Official Liquidators of SPI Energy, the Petitioners have directed and supervised all of the aforementioned actions from the Cayman Islands.

24.     SPI Energy historically conducted operational and management functions from the United States, including California.  However, following the entry of the Winding Up Order and the appointment of the Petitioners as independent officeholders of the Cayman Court, the center of actual administration, control, creditor engagement, books-and-records access, liquidation decision-making, and litigation oversight shifted to the Cayman Islands.

III.     **The Debtor's Center of Main Interest is in the Cayman Islands.**

25.     It is submitted that SPI Energy's COMI is in the Cayman Islands, based upon the following:

A.     *Registered Office/Place of Incorporation.*  As noted, SPI Energy is registered in the Cayman Islands, thereby creating a statutory presumption that the Cayman Islands is the Debtor's COMI.  From 2015 to the present, the Debtor's registered office has at all times been in the Cayman Islands.

B.     *Location of Headquarters.*  Since the entry of the Winding Up Order, SPI Energy has no longer had operative headquarters in California, and its affairs have instead been administered from the Petitioners' offices in the Cayman Islands.  All official and material decisions taken on behalf of SPI Energy since the Winding Up Order, including decisions concerning asset realizations, litigation strategy, creditor engagement, and regulatory communications, have been directed by the Petitioners from the Cayman Islands. While SPI Energy formerly had an office in California prior to the Petitioners' appointment, the lease terminated and the landlord obtained a judgment for possession as of December 20, 2024.

12

C.      *Location of Managers.*  Management and control of SPI Energy's affairs now resides exclusively with the Petitioners, who operate full-time from the Cayman Islands.  Significantly, all of the Debtor's interactions with creditors and other third parties, including the SEC and other regulatory bodies, are conducted from the Cayman Islands. Since the Winding Up Order, the Petitioners have attended to the ongoing affairs of the Debtor, including as set forth above in Paragraphs 21 and 22.

D.      *Location of Company Assets and Operations.* SPI Energy is a Cayman Islands registered company, which acts as the ultimate holding company of a group of companies comprising the Debtor and its subsidiaries.  The Debtor operates its subsidiaries which conduct business around the world, including North America, Australia, Asia, United Kingdom, Italy, Greece and Japan.  In 2015, the Debtor registered in the Cayman Islands and has been subject to the Companies Laws of the Cayman Islands.  The Debtor's operations and assets are geographically dispersed across multiple jurisdictions; however, the administration and control of those operations for insolvency purposes are centralized in the Cayman Islands under the direction of the Petitioners.

E.      *Location of Creditors.* The Cayman Proceeding was commenced by Streeterville Capital, the Debtor's largest known creditor, due to a default under the Deeds of Settlement and six (6) separate Addenda thereto, all of which were subject to Cayman Islands law.  All other purported creditors of the Debtor are geographically dispersed around the globe.  The Petitioners have administered the creditor process from the Cayman Islands and have issued creditor communications from the Cayman Islands. To date, eight (8) proofs of debt have been submitted in the Cayman Proceeding, including one (1) from a Cayman Islands-based creditor. No creditor has objected to the Cayman Islands as the forum for the Debtor's insolvency proceeding. As noted above, upon their appointment, the Petitioners filed a Form 8-K with the SEC providing notice to stakeholders of the Cayman Proceeding. The Petitioners are still investigating the creditors of the Debtor, and have made efforts to provide notice to all creditors of the pending Cayman Proceeding.

F.      *Liquidation Activities and Administrative Functions*. Since their appointment as Joint Official Liquidators, the Petitioners have exercised centralized control over the Debtor's liquidation from the Cayman Islands.  Their Cayman-based activities have included investigating SPI Energy's business affairs including the

13

operations of the Debtor's wholly owned direct and indirect subsidiaries and affiliates in the multiple jurisdictions worldwide, collecting and reviewing books and records, and engaging with creditors and stakeholders. These activities have also included managing regulatory and public notice obligations, retaining counsel in relevant jurisdictions, overseeing pending litigation, implementing asset realization efforts, investigating the Debtor's corporate and financial affairs, and coordinating related group insolvency steps. *See e.g.* Paragraphs 21 and 22 hereof.  The goal of the Cayman Proceeding is to effectuate the orderly liquidation and administration of SPI Energy and to coordinate related steps affecting the SPI Group Companies where appropriate, all for the benefit of creditors and interested parties.  The actions taken in the Cayman Islands were not taken for purposes of manipulating the Debtor's COMI to be in the Cayman Islands; rather, these actions were consistent with their obligations under the Winding Up Order and under Cayman Islands law, and they would have taken these actions even in the absence of a chapter 15 case.

26.     While SPI Energy is a party to proceedings in the United States and elsewhere, those matters are being centrally managed and coordinated by the Petitioners from the Cayman Islands as part of the overall administration of the estate.

27.     The goal of the Cayman Proceeding is to effectuate the orderly liquidation and administration of SPI Energy and to coordinate related steps affecting the SPI Group Companies where appropriate, all for the benefit of creditors and interested parties.  The Petitioners anticipate that the Chapter 15 Case will complement the Debtor's primary proceedings in the Cayman Islands to ensure the effective and economic administration of the Debtor's liquidation efforts.  The Chapter 15 Case may prove vital to assisting the Petitioners' investigations and their efforts to recover assets of SPI Energy for the benefit of its creditors.

28.     The Petitioners request that this Court grant the Motion and enter an order (a) granting recognition to the Cayman Proceeding as a foreign main proceeding and granting all of the relief afforded to such proceedings; (b) recognizing the Petitioners as "foreign representatives" in respect of the Cayman Proceeding; (c) entrusting the Petitioners with the administration of any

14

and all of the Debtor's assets within the territorial jurisdiction of the United States; (d) providing that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment or modification of such order; and (e) providing such other and further relief as the Court deems proper and just.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 17th day of April, 2026.

Grand Cayman, Cayman Islands

Graham Robinson