**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| SPI Energy Co., Ltd., | Case No. 26-10536 |
| Debtor in a foreign proceeding.[1] | |

**DECLARATION OF IAN LAMBERT IN SUPPORT OF**
**DEBTOR'S CHAPTER 15 PETITION FOR ENTRY OF ORDER RECOGNIZING**
**FOREIGN MAIN PROCEEDING AND GRANTING ADDITIONAL RELIEF**

1. I am a partner at the Cayman Islands law firm, Broadhurst, LLC ("**Broadhurst**"),[2] located at 4th Floor, Monaco Towers, 54 Edward Street, PO Box 2503, Grand Cayman KY1-1104, Cayman Islands. Broadhurst is Cayman Islands counsel to SPI Energy Co., Ltd. (In Official Liquidation), the above-captioned debtor ("**SPI Energy**" and/or the "**Debtor**") in an insolvency proceeding (the "**Cayman Proceeding**") pending before the Grand Court of the Cayman Islands, Financial Services Division (the "**Cayman Court**"). True and correct copies of the documents evidencing commencement of the Cayman Proceedings are attached as Exhibit A to the Official Form B 401 *Chapter 15 Petition for Recognition of a Foreign Main Proceeding* (the "**Petition**").

2. Graham Robinson and James Parkinson of Crowe Cayman Ltd. (the "**Petitioners**"), who were appointed as the Joint Official Liquidators of SPI Energy Co., Ltd. (In Official Liquidation), engaged Broadhurst as counsel to advise on issues of Cayman Islands law arising in connection with the Cayman Proceeding.

---

[1] The Debtor in this chapter 15 case, along with the last four digits of the Debtor's Cayman Islands Registration Number, is: SPI Energy Co., Ltd. (in Official Liquidation) (9333). The location of the Debtor's service address for the purpose of this chapter 15 case is c/o Crowe Cayman Ltd., 94 Solaris Avenue, PO Box 30851, Camana Bay, Grand Cayman KY1-1204 Cayman Islands.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Verified Petition.

3.      I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration (this "**Declaration**"). I make this Declaration in support of (i) the Petition, (ii) the *Petitioners' Motion for (I) Recognition of a Foreign Main Proceeding and (II) Related Relief* (the "**Motion**"); and (iii) the *Motion for Entry of Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007* (the "**Scheduling and Notice Motion**").  In preparing this Declaration, I have reviewed the documents submitted in this chapter 15 case, specifically the Petition, the Motion and Scheduling and Notice Motion.

4.      The facts and matters contained in this Declaration are true and correct to the best of my information, knowledge and belief. To the extent that statements in this Declaration are of my own legal opinion, they represent my views and understanding of the laws of the Cayman Islands as a practicing Cayman Islands attorney.

5.      Although I am not a U.S. attorney and do not purport to give authoritative opinions on U.S. law, I am familiar with chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") and the function of Cayman law declarations in support of chapter 15 recognition proceedings.

### Professional Background and Qualifications

6.      I was called to the Bar of Ontario, Canada in 2003 and to the Cayman Islands Bar in 2009. I have practiced Cayman Islands law for more than 16 years.

7.      My practice is focused on insolvency, restructuring, multi-jurisdictional litigation, asset recovery, contract disputes, and fraud litigation.

8.      Broadhurst is a Cayman Islands law firm with a substantial commercial litigation and insolvency practice, including cross-border litigation, corporate disputes, insolvency and restructuring, asset recovery, enforcement of foreign judgments, and conflicts of law.

## RELEVANT SOURCES OF CAYMAN ISLANDS LAW

9.     The Cayman Islands is a British Overseas Territory and, as such, its laws are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law brought to the Cayman Islands by early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

10.     Where no specific local statutory provision applies, the courts of the Cayman Islands will apply English common law as adapted to the circumstances of the Cayman Islands. On questions governed by the common law, the doctrine of judicial precedent applies. The court of first instance is the Cayman Islands Grand Court, which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong.[3] There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal. The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "**Privy Council**") which sits in London, England and which is comprised of members of the UK Supreme Court (the highest court in the United Kingdom and formerly known as the Judicial Committee of the House of Lords). The Cayman Islands Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

---

[3] Re Bank of Credit & Commerce International, CILR 56 [1994-95].

11.     There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports. Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue. Where there is no Cayman Islands authority on a particular issue, the Cayman Islands courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of other Commonwealth jurisdictions. Decisions of the English Court of Appeal and UK Supreme Court are regarded as highly persuasive. So too are decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions. The decisions of the highest courts of the other developed Commonwealth jurisdictions such as Australia, New Zealand, Canada, and Hong Kong might have persuasive effect on the decisions of the Cayman Islands Grand Court, depending on their subject matter.

12.     The principal statutory regime governing the winding up of Cayman Islands companies is the Cayman Islands Companies Act (2026 Revision) (the "**Companies Act**"), supplemented by the Companies Winding Up Rules (2023 Consolidation) (the "**CWR**"), the Insolvency Practitioners' Regulations (the "**IPR**"), the Foreign Bankruptcy Proceedings (International Co-operation) Rules, 2018, and the Grand Court Rules. Liquidation procedures in the Cayman Islands include official liquidations, voluntary liquidations, and provisional liquidations. Part V of the Companies Act is an insolvency law relating to insolvency or adjustment of debt. Provisions of Part V of the Companies Act apply to companies formed and registered under the Companies Act or its predecessors, including companies that are formed as exempted companies.

13.     True and correct copies of the Companies Act and the Companies Winding Up Rules are attached hereto as **Exhibit A**.

## SPI ENERGY'S CORPORATE STATUS

14. SPI Energy is a Cayman Islands company that was incorporated as an exempted company on May 4, 2015, under registration number 299333. Its registered office is currently c/o 373 LTD. (T/A "BOOKERS"), PO Box 31503, Grand Pavilion Commercial Centre, 802 West Bay Road, KY1-1207, Grand Cayman, Cayman Islands. A copy of a January 5, 2024 Cayman Islands Registrar of Companies Search Report for SPI Energy and a copy of SPI Energy's July 29, 2025 Certificate of Restoration are attached to the Motion as **Exhibit B**.

15. SPI Energy's common shares are listed for trading on the OTC market under ticket SPIEF.

16. SPI Energy's common shares were formerly listed for trading on NASDAQ under ticket SPI. On January 13, 2025, SPI Energy received a notification letter from The NASDAQ Stock Market LLC (the "NASDAQ Letter") stating that NASDAQ had determined to delist the company's securities from The NASDAQ Capital Market due to violation of Listing Rules 5250(c)(1) (reporting obligations) and 5550(a)(2) (the bid price requirement), as well as SPI Energy's failure to hold an annual meeting of shareholders. The NASDAQ Letter further notified SPI Energy that trading in its securities would be suspended effective as of the opening of trading on January 15, 2025.

17. SPI Energy is a global renewable energy company and provider of solar storage and electric vehicle solutions. The business was founded in 2006 in Roseville, California and historically maintained headquarters functions in Sacramento, California. At relevant times, SPI Energy maintained global operations through subsidiaries and affiliates in North America, Australia, Asia, the United Kingdom, Italy, Greece, Malta, Cyprus, and Japan.

18. SPI Energy was incorporated as a Cayman Islands exempted company. A Cayman Islands exempted company is prohibited from undertaking business in the Cayman Islands except

5

in furtherance of its business carried on outside of the Cayman Islands. Specifically, any proposed company applying for registration as an exempted limited company under the Companies Act must show that its objectives are to be carried out mainly outside of the Cayman Islands. However, to further those objectives outside of the Cayman Islands, it may effect and conclude contracts and exercise all its powers necessary for the carrying on of its business within the Cayman Islands. In other words, it can employ staff or agents in the Cayman Islands and hold offices in the Cayman Islands.

19.     SPI Energy's registered office has at all times been in the Cayman Islands. Historically, substantial operational and management functions of SPI Energy were conducted from the United States, including California. However, following the appointment of the Petitioners by the Cayman Court on July 22, 2025, the administration and control of SPI Energy's affairs for insolvency purposes shifted to the Cayman Islands. As pointed out previously, the registered office of SPI Energy has been situated in the Cayman Islands since its inception and continues to be so situated. Under private international law, shares are deemed to be situated in the country where they can be effectively dealt with between the shareholder and that company. *See 160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. Since the register of members and register of partners is maintained at their respective registered offices in the Cayman Islands, any issues relating to the title of those shares and partnership interests will be governed by the laws of the Cayman Islands.

### THE JOINT OFFICIAL LIQUIDATORS' APPOINTMENT

20.     The Cayman Proceeding was commenced by Streeterville Capital, LLC ("Petitioning Creditor") by application for a winding up order on the ground set out in section 93(a) of the Companies Act, namely that SPI Energy was unable to pay its debts. The debts relied upon included: (i) obligations under four (4) separate convertible promissory notes (collectively,

the "Notes") between SPI Energy and the Petitioning Creditor with a total outstanding balance as of the commencement date of US$6,653,582.99, along with all accrued interest, contractual fees, charges and payment penalties arising under the Notes; and (ii) an arbitration award dated November 6, 2023 in favour of the Petitioning Creditor against SPI Energy in the amount of US$1,836,191.25 arising from a default under a Securities Purchase Agreement dated April 8, 2022 by and between the Debtor and the Petitioning Creditor.

21.      After the initial filing of the winding up petition and prior to any Winding Up Order being entered by the Cayman Court, the Debtor and Petitioning Creditor entered into binding Deeds of Settlement and six (6) separate Addenda thereto, whereby, pursuant to the terms thereof, the Debtor agreed to make certain installment payments to the Petitioning Creditor.  Ultimately, the Debtor defaulted under its payment and other obligations under the Deeds of Settlement and Addenda, resulting in an amended petition for the winding up of the Debtor before the Cayman Court.

22.      In addition to payment defaults, the Petitioning Creditor relied on further grounds for the winding up of the Debtor, including, *inter alia*, (i) SPI Energy's management's failure to take steps to prevent the suspension and delisting of SPI Energy's NASDAQ shares and (ii) loss of confidence in SPI Energy's directors and management.

23.      On July 22, 2025, the Cayman Court entered the Winding Up Order in accordance with Cayman law and appointed the Petitioners as the Joint Official Liquidators of SPI Energy.

## THE CAYMAN ISLANDS PROCEEDING

24.      The Cayman Islands Proceeding is a judicial liquidation proceeding in which the assets and affairs of SPI Energy are subject to the control and supervision of the Cayman Court. Pursuant to Section 97(1) of the Companies Act, once an order has been made for the winding up of a company, no suit, action or other proceeding shall be proceeded with or commenced against

that company, except with leave of the Cayman Court and subject to such terms as the Cayman Court may impose.

25.    Unless otherwise provided by the Winding Up Order, Schedule 3, Part I to the Companies Act sets out the powers that the Joint Official Liquidators may exercise with the sanction of the Cayman Court. They are:

a.    *Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.*

b.    *Power to carry on the business of the company so far as may be necessary for its beneficial winding up.*

c.    *Power to dispose of any property of the company to a person who is or was related to the company.*

d.    *Power to pay any class of creditors in full.*

e.    *Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.*

f.    *Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.*

g.    *Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.*

h.    *The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.*

i.    *The power to raise or borrow money and grant securities therefor over the property of the company.*

j.    *The power to engage staff (whether or not as employees of the company) to assist that person in the performance of that person's functions.*

> k. *The power to engage attorneys and other professionally qualified persons to assist that person in the performance of that person's functions.*

26. Schedule 3, Part II of the Companies Act further provides that the Joint Official Liquidators are permitted to exercise the following powers without the Cayman Court's sanction:

> a. *The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as that person considers necessary.*
>
> b. *The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.*
>
> c. *The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against that person's estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.*
>
> d. *The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.*
>
> e. *The power to promote a scheme of arrangement pursuant to section 86.*
>
> f. *The power to convene meetings of creditors and contributories.*
>
> g. *The power to do all other things incidental to the exercise of that person's powers.*

27. The Winding Up Order ordered that SPI Energy "shall be wound up by the Court in accordance with the provisions of the Companies Act (as amended and revised)." *See* **Exhibit C** to Motion (Winding Up Order), ¶ 4.

28. Upon their appointment, the Petitioners were authorized to exercise a broad range of powers in relation to SPI Energy, including the power to carry on SPI Energy's business so far as necessary for its beneficial winding up, engage staff, and incur reasonable disbursements in connection with the performance of their duties. *Id.*

29.     Since their appointment on July 22, 2025, the Petitioners have taken numerous steps to wind-up SPI Energy and carry out their duties in the Cayman Proceeding from the Cayman Islands, including:

     a.     seeking to obtain and centralize access to the books and records of SPI Energy and its affiliates and subsidiaries located around the world;

     b.     attending to their statutory obligations under the Companies Act, the CWR, and the Winding Up Order;

     c.     independently verifying the current status and standing of key and related parties and considering available information concerning business ventures, companies, and legal proceedings involving SPI Energy and its affiliates and subsidiaries;

     d.     communicating with key and related parties, including asset holders, current directors and professionals, and Cayman Islands and foreign banks, in order to ascertain the location and status of assets;

     e.     engaging Cayman Islands counsel and foreign counsel to advise on legal, strategic, and pragmatic issues arising in the administration of the estate;

     f.     providing necessary notices and making required filings, including public and regulatory notifications;

     g.     investigating pending litigation involving SPI Energy and its affiliates and subsidiaries and retaining counsel in relevant jurisdictions to protect estate interests;

     h.     negotiating the sale of certain assets, including without limitation SPI Energy's Australian subsidiary;

     i.     providing notice to known creditors and administering the filing of claims in the Cayman Proceeding;

     j.     engaging in the negotiation and resolution of claims; and

     k.     acting in related Cayman insolvency processes affecting SPI Energy group entities, including in relation to SolarJuice Co. Ltd.

30.     Since their appointment, the Petitioners have directed and supervised all the foregoing actions from the Cayman Islands. They operate full-time from the Cayman Islands, and

all creditor communications concerning the Cayman Proceeding have been issued from the Cayman Islands.

31. The books and records of SPI Energy are electronically accessible and controlled from the Cayman Islands under the direction of the Petitioners.

32. The creditor claims process in the Cayman Proceeding is being administered from the Cayman Islands. To date, eight proofs of debt have been submitted, including one by a Cayman Islands-based creditor. No creditor has objected to the Cayman Islands as the forum for SPI Energy's insolvency proceeding.

33. Since the making of the Winding Up Order, the Petitioners' conduct has been subject to the supervision of the Cayman Court. The Petitioners are qualified insolvency practitioners and officers of the Cayman Court. Their actions are subject to review by the Cayman Court. They are required to act independently of SPI Energy management and stakeholders and in an even-handed fashion as between creditors and other interested parties. They also are required to file periodic reports and apply for approval of their fees to the Cayman Court.

34. Given that the Petitioners have been given control of SPI Energy, subject to the control and supervision of the Cayman Court, the restrictions that ordinarily apply to the activities of an exempted company within the Cayman Islands are of no practical effect or significance during the liquidation.

35. Section 110(1)(a) of the Companies Act provides that it is the function of an official liquidator to collect, realize and distribute the assets of the company to its creditors and, if there is a surplus, to the person entitled to it. Because the Cayman Court ordered the court-supervised

liquidation of SPI Energy, its estate is required to be distributed in accordance with the statutory regime under the supervision of the Cayman Court.[4]

36.     Out of the assets that fall into the liquidation estate, the Petitioners are bound to pay creditors in the following order of priority after taking into account the expenses of the liquidation:

    a.    secured creditors in respect of any asset sold on behalf of the secured creditor subject to a fixed charge;

    b.    preferential debts pursuant to section 141 of the Companies Act;

    c.    secured creditors whose security is subject to a floating charge; and

    d.    all other unsecured creditors on a *pari passu* basis subject to any other legal requirements or agreements otherwise, which bind the company, pursuant to Section 140 of the Companies Act.

37.     As a matter of general principle, under Cayman Islands law, assets over which a valid fixed security has been granted fall outside the liquidation estate except to the extent provided by law.

38.     The Cayman Proceeding provides a centralized process for the assertion and resolution of claims against SPI Energy and for the distribution of assets to creditors. Recognition is sought to protect SPI Energy's assets and maintain and maximize the value of SPI Energy's estate.

39.     For the Petitioners to effectively finalize SPI Energy's liquidation, they require access to SPI Energy's complete books and records and to relevant parties, including in the United States. Recognition of the Cayman Proceedings and the relief sought in the chapter 15 case will assist the Petitioners in protecting and assembling SPI Energy's assets and information.

---

[4] There are no provisions in Cayman Islands insolvency law creating any special prejudice or inconvenience for the processing of claims held by entities in the United States in a Cayman Islands winding-up. In addition, pursuant to the CWR, creditors of the insolvent company may assert their claims by mail and are not required to appear before the Cayman Islands Grand Court or the liquidator.

40.     In my opinion, the Cayman Proceeding is a collective, court-supervised insolvency proceeding under Cayman Islands law, and the Cayman Islands is now the jurisdiction from which SPI Energy's insolvency affairs are centrally administered and supervised. Historical U.S. litigation involving SPI Energy reflects legacy operations and is now being managed from the Cayman Islands as part of the overall administration of the estate. The Petitioners therefore seek recognition of the Cayman Proceeding as a foreign main proceeding and related relief to enable them to gather, protect, and administer SPI Energy's assets and information, including assets and information located or held in the United States.

*[Signature on the following page]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 17th day of April, 2026.

Grand Cayman, Cayman Islands

Ian Lambert
Broadhurst LLC
4th Floor, Monaco Towers, 54 Edward Street
PO Box 2503
Grand Cayman KY1-1104
Cayman Islands